Your Honor, it's good morning. Hang on just a sec, let me get set up behind you. Absolutely. Well, I apologize. No, no, no, no apology necessary at all. It's just taking a minute to set up. All right, ladies. All right, when you're ready, Counsel. Your Honor, it's good morning. Michael Green for the Apple Eye. I was a little bolstered when I heard you say you were looking forward to the oral arguments. I had a feeling I was not included in that statement. We're very inclusive. We included you. It was never my intention, other than responding to your questions, to take my full time. But this is maybe as an old man, as I get older, and years of litigation, I believe people should have their day in court. And our courts over the years frown on someone losing their right to be heard before a jury or their peers. And there are two competing points of view in this case. The plaintiff apparently was a star until he falls down and gets hurt in 2010. They say he was disruptive and insubordinate. That's why they terminated him. And when I look at the case, I mean, is there not a genuine issue of material fact regarding at least his termination? There are a number of issues that we raise. And, for example, I mean, the plaintiff obviously is dramatically injured. At least he's out for a long period. So you get to the third step of the McDonnell-Douglas analysis. Yes. Tell me what evidence there is that there are reasons for discharging him or pretextual. We know he's got a qualifying disability for purposes of this. We know that the employer says it's because you fell asleep on the job and other things occurred like that. So tell me what evidence there is that their firing was a pretext for disability discrimination. One of the things they do is, I mean, the man's working graveyard. And apparently from his doctor, the man needs to get some sleep and get some rest. So he heals a little bit quicker. So he wants to go on the swing shift. They say, wait, wait, you can't. You can't go on the swing shift because you have to walk up and down. You have inclines. You have to check doors. There's so much work to do in the swing shift that we can't accommodate you because the people working on that shift are going to have to do your job. That's what they say to him. So what do they do? They hire a guy with gout. The guy sits in a kiosk all day. Everybody does his work. And I have a letter from the defendants who say to my client, you know what, just reapply. But you're talking about his termination now. Yes. I mean, I'm not sure you've got a claim in here that not putting him on the swing shift was the disability discrimination. But even if you did, tell me, focus on the termination. Well, I mean, they terminated him, they say, for being disruptive. And they say that he didn't follow protocol and he didn't follow procedure and he was doing things wrong. And he apparently admits that's true. He says, well, yeah, I didn't write up these folks for whatever they were doing, I hesitate to guess, but other people don't write them up either. But that's hard for me to see, disability discrimination. This is my thought about that to litigate the case. And I could be wrong. I could be wrong. I think when you present this case, depending on what, if I get a chance to, and depending on what the trial court allows in evidence, I think you have to look at the totality of what the evidence is. For example, he gets terminated and they give a reason for it, but is it really the reason? Is it really the reason they terminated him? They went after this guy hand and foot after he came back from his injury. And one of the things was they say he wanted to go to church on Sundays. They said, wait a minute, there's four churches. We know there's four churches. There's no conflict. Go to church when you get off on Sunday. He said, all they ever said to me was, when did you start believing in God? There was no discussion about that. If I take it, I don't want to thank you for your question, but it was a proper question for me to try to answer. If we take it in a vacuum, how is it pretextual why they fired him? Well, focus on disability. Yes, yes. Focus on disability because I think you've got other problems with the religious discrimination claim. So focus on disability. One of the things they did was he could put his foot up for a couple hours a day or a period of time, and there's a chair that he uses. So what do they do? They take the chair away. They put a stool in there, which he can't use. So the poor guy goes up to the swimming pool where there's a hassack, and he puts his foot up there, and they say he fell asleep during work hours. He said, wait a minute, you said I could sleep during my lunch hour. If I take it, as I said, in a vacuum, I'm in trouble because if you peel away the onion and we just look at the termination for the reasons they gave and we don't bring in the collateral issues that they did to this man that seem to show or tend to show there's a bunch of maloney about the reason they gave for termination. We say it was pretextual, and we say it was discriminatory, and that's why he got fired. If I have to do it in a vacuum, I'm done. I'm not winning this case because I'm left with a sliver of evidence before the trier of fact. And depending on how the case, if you believe that there is a genuine material issue of fact to something, anything, and I get a chance to go back to a trial court, and if I wind up getting limited out about certain things, I'm in serious trouble. I'm going to beg them to settle the case. But if I take it in the vacuum that you suggested I answer today, I've got problems. I think I have to look at the totality of the evidence and the reasonable inferences to be drawn from that evidence to see whether or not this was pretextual and whether the reasons were discriminatory. Can you address the statute of limitations, which the district court didn't address, but it seems to me at least some of the claims are time-barred, aren't they? I think they are. You know, this is not an apology. I picked the file up Tuesday. I haven't seen this file in years, and I'm looking at the moving papers, and I see we're not contesting summary judgment on 5, 6, and 12, and some of the claims apparently are time-barred. I can't argue with that because I wasn't part of this. I know what I'm left with, what they say I'm left with, and one of them is a termination, and that's the only place I can go to help this man. Is that the only claim that's not time-barred? There's four, but they're, I mean, if I can get you to agree that one of those presents a material issue of genuine issue of fact, I'll go back there, but I think there's three or four that are not time-barred, Your Honor. Let me see if I can find them for you. But the district court did not reach the question of statute of limitations? No. You know, it seems like it was brought up in the moving papers. I have denial of pay in 2012. It was brought up, but the district court said, I'm going to rule against you on another ground so I don't have to reach it. That's right. Denial of pay in 2013, receipt of a smaller bonus 2012, no bonus 2013, and the termination. So that's what it is. Let me sit down with this, and I didn't reserve anything because these facts are not that complicated. Maybe because of the years I've been honored to be in courtrooms, just when I see someone who has a claim, and in good faith they file a claim, and they're denied their day, I just think we need to at least reach out, if we have a legal basis, to find a genuine initial material fact to give the man his day in court. And then I'll deal with the trial judge and see what the judge says. Listen, the judge who threw this out is one of our stars. He's a terrific jurist. I didn't argue the case, but he's a really good judge. So I'm left with what I'm left with, but I only know one way to try this case.  that there is surrounding circumstantial evidence. That is to simply go to them saying, you did really bad things, you didn't follow procedure, it was non-protectural, and it was non-discriminatory. Take a hike. That's what I'm left with. Why don't we hear from the other side, and then you've saved quite a bit of time. Well, I will. Thank you very much for hearing me. Good morning. May it please the Court, Anna Elantosny for the defendant's appellees. Your Honors, the central question is whether or not the plaintiff appellate has produced evidence to create material issues of fact and dispute to survive summary judgment. As counsel conceded, and as it was clear before the trial court, the plaintiff actually is not disputing the facts of the case as laid out by the defendants in its motion and also repeated in the answering. Well, is there no dispute? Maybe there isn't, but the plaintiff says, well, yeah, I did sleep on the job, but other people did too who were not disabled and they weren't fired. He says, I didn't report this sexual incident, but other folks who were not disabled didn't report similar incidents and they weren't fired. That's evidence. It may turn out not to be credible, but why doesn't that impede summary judgment? Because I believe, Your Honor, with respect to this Court's decision in Burgeen v. Salt River Project, evidence of pretext has to be specific and substantial to survive summary judgment. You can allege people, but you need to show with respect, for example, disability discrimination, that there is a treatment, different treatment, between disabled and non-disabled. But doesn't he specifically, and he says, and I know it's his own declaration, but you say the facts aren't disputed, which surprises me a little, but if they're not, he says, non-disabled people who engaged in the same conduct I did were not fired. Isn't that enough to meet his relatively minimal burden on summary judgment, which is to just show a material issue of fact? So let me turn to two of his exemplars or his comparators. First, the transfer to the swing shift. I'm focusing on termination now because the lack of transfer to the swing shift doesn't show pretext on termination to me. It may show there may be discrimination on that failure to transfer. I'm focusing on termination. The reason for termination was you're doing a lousy job. You fall asleep on the job, you're confrontational, and you don't report incidents. And at least on two of the three, he says, well, I'm just the same as other non-disabled people here who are not fired. So focus on those for me. I think what the issue is going to be, you can say always I'm treated differently, but in summary judgment you're required to identify the comparators. He identifies unnamed, unidentified people who he presumes or asks the court to agree with him, must be non-disabled, and must therefore prove discrimination. The court in summary judgment requires more than just an assertion. Who is the person who is the comparator, who was sleeping on the job, who you believe was not treated the same and was not subjected to disciplinary action? How many security officers are there at this complex? In this complex at the time they had about a dozen, I believe. And? With three shifts. Does it make a difference that the relative, and obviously he's only talking about the night shift. Right. So now we're talking about how many? If I remember right, there were three on the night shift. I cannot remember the disbursement between the day. And under those circumstances, is it really necessary that he name the person? I believe it is because if he's going to identify who they were, for example, and I understand you believe it's with respect to the swing shift, just the swing shift, but one of the people who was on the night shift with him, there was at one point in time, because we're talking about a two-and-a-half-year span, was Mr. Tom, Dexter Tom, who he said was disparately treated because he was allowed to transfer away from the night shift and he was not. Mr. Tom is also disabled, according to plaintiff's own declaration. You don't get disparate treatment by pointing to another disabled person. That's why I was saying stay away from the night shift. But again, we're focusing on the night shift. The other one is Nathan Jones. Mr. Jones was cited in his opening brief on page 12, and it was another coworker on the grave shift. Although he doesn't specify it, Mr. Jones was, I believe, non-disabled. It's not in the record. But what he was pointing out was that Mr. Jones didn't get a raise. Well, Mr. Jones is non-disabled. If he didn't get a raise and Mr. Turner did not get a raise, again, the comparison is not there. Let me be clear. My initial cut at this is that with respect to everything but termination, your colleague has a hard time getting over the hill. I'm just trying to focus on termination for the moment. And there's specific reasons given for the termination. They're non-protextual facially. Right. So now the question is, well, are they real because you're treating me one way and other people another? And, again, I believe in the area of pretext, when you look at the McDonnell-Douglas, and we've cited the cases in our answering brief, in the shifting burdens, the burden of production with respect to pretext, circumstantial evidence or direct evidence is placed upon the non-moving party in this case, the plaintiff. Other than making these assertions, there's no identification in the record of specific people or identifying them as non-disabled, which we would have been able to say that this is not a true comparison, or et cetera. The fact is, Your Honor, is that Mr. Turner was subjected to two and a half years of progressive discipline for a course, long period of time, where up until he was terminated, he never alleged discrimination in any of his points. He never said anything, which is why we have a time bar problem as we outlined in our answering brief and in the motion for summary judgment. On that time bar issue, do you think it's something we should address in the first instance? Because there's a series of challenges here. I didn't get a bonus. You refused to transfer me. You fired me. Not all of them are time barred, right? True. And the four the plaintiff has conceded are the ones that were within the time frame are the only four that were left, and termination being at the tail end. But when we're looking at all of the evidence over a period of time, you can see that he was subjected to progressive discipline. The record was replete with documentation showing that he was given notice that counseled him, they brought him in, and they had subsequent progressive discipline to the point where they just could not take it anymore and terminate him. One other record question for you. Yes. There's a point in time when Mr. Turner basically says, I can't walk the entire, you know, I can't walk as long as the job apparently requires me to walk, and what he's told is, well, work it out on your own. Does that occur outside the 300 day time bar or in it? I think it was, there were two periods of time. I remember one discussion with his doctors with respect to his left foot injury. Right. But I'm focusing on the initial injury now. Yes. Which was the right foot, wasn't it? No, left foot first. Okay. I guess the right foot one, I understand the doctor never responds. I'm sorry. Right foot never responded. Left foot, there was a discussion, which is why they went back for clarification and actually done it. That was at the very beginning of his time back. Right. Right when he returned from his worker's compensation injury. So that one would likely be barred even if there were some claim that you failed to sufficiently interact. Yes, unless he could show that that particular condition worsened over time, because under the EEOC guidelines and the regulations, we have a continuing duty to engage in the interactive process. Right, and that was my question. Was there sufficient interactive process when he came back and said, gee, this isn't working very well? Yes, Your Honor. I think the record will show that they did go in constant communications, which is why they documented with his doctors. And he had two treating physicians, so they had to go through both of them. I do believe there was discussions about the type of chair that he would put his foot on, which is another reason why they were going back in terms of how high does he have to elevate his foot, how low. And the final position came back, he didn't have to elevate it higher than his heart. And so those kinds of discussions you will also see in the record, discussions about the pavilion, you know, which is where all the security guards were banned from. So constant. You know, when you got up early on, you said this would be a different case if he had actually named the comparators. I think it would provide us more specifics for the court. I don't think it would change the case. Okay, I'm on page 1041 in the ER. Okay. Paragraph 28, it's Mr. Turner's declaration. All right. Other employees regularly slept on property, but they were not suspended or written up. Gil, Eli, Ira, Rob, all slept on property and Reeder and Johnson knew this. I was singled out due to my filing workers comp claim, requesting reasonable accommodations for my foot injury, and them wanting to get rid of me. Well, he just identified four employees who were not comparably treated. I understand your honor. I think that was swept up in the part of the time bar arguments, which is why we did not reach it in the motion. Because the sleeping on the job suspension occurred, I think, in the early part of when he's returned to work. But if we're trying to figure out motivation, I think this is relevant. And if we've got a long sequence of events, some of them outside the time period for cause of action, but we can look at that sequence in determining motivation. He claims in his declaration, and for our current purposes, we have to assume that he's telling the truth, unless it's just sort of the moon is made out of green cheese, sort of implausible. He claims that when he comes back, he's treated differently. He is disciplined for sleeping when the others are not disciplined. They take away the one chair in the break room that would allow him to put his foot up. He then goes somewhere else, and he's told, you can't go there. He does the pink slip routine, which is not entirely clear to me, but he cleans it up, makes it really good, and as soon as that happens, they take it away from him and make him do walking that he otherwise wasn't going to do. I mean, he's got a lot of things. Oh, and they give him, this isn't swing shift, this is graveyard shift. His previous graveyard shift had been from 11 at night to 7 in the morning. The graveyard shift they give him when he comes back is 12 to 8. Well, it sounds the same until you read his declaration. He says, listen, if I get off work at 8, it takes me a long time to get home. If I get off at 7, I get home easily, and everybody knows that the graveyard shift from 11 to 7 is a much better shift. I mean, he's got lots of stuff in there, all of which tends to show, if believed, that they just didn't like the guy, and they were trying to get at him, and that helps him, I think, when he says the reason for firing was protectual. This is just the culmination of this long sequence of events, all of which were designed to punish me for coming back when I came back disabled. How do you respond to that? I respond to it is that that's his interpretation. The question is whether or not he had produced evidence to show that those... No, he hasn't produced evidence. Every bit of the thing I just described to you is in his declaration. So we have to treat that as true. I think it requires more than his declaration. You said before he had a name to people, Judge Fletcher. I just told you that he named them. Is it your view that he must also say they were non-disabled? Yes. But you know which four people they are. It's not like you're not giving sufficient notice of that. You surely could have responded to that declaration by saying those folks are all disabled, so... And, Your Honor, all I can say is we carved, and as you said, he has 2 1⁄2 years of incidents of which we have 2 1⁄2 years of documentation showing legitimate non-discriminatory reasons for each of the incidents, which is why we did the motion for summary judgment, all I can tell you in terms of the time bar, and confined the remainder of the motion to the claims that were live. Let me ask you a question about what the district judge said here, and I share counsel's high opinion of the district judge. The district judge said something, well, your declaration was self-serving. Does that matter? Aren't all declarations self-serving? No one would ever file a self-defeating declaration, would they? Understood, but normally you would have... I think there's a difference between making conclusions and just saying all of this is discriminatory versus pointing out incidents where you believe that other people were treated differently. I think if you look at the totality of his declarations, with some exceptions, they are primarily basically saying that this was all discriminatory. I think part of the things that we found to be problematic was, for example, in the accommodation process, which is one of the issues here in terms of failure to accommodate. He just declared it to be unfair, and the defendant tried to explain to the plaintiff, to his two treating physicians, and his attorney, why the parties were required to go through the accommodation process, and nevertheless he refused. All we can do is put that information before the judge, make the argument... That's with the second foot injury. Right, the second foot injury. And the same approach was taken. If you're looking at the totality of evidence, if an employer were bound and determined to discipline someone and to get rid of him, you would believe that it would take shorter than 2 1⁄2 years. The reality is that he purposely, actually, and that's one of the things they pointed out in the termination letter, is that he went on this campaign of being disruptive and insubordinate to his manager and his supervisor. And his behavior, notwithstanding what counsel says and Mr. Turner claims in his declaration, he was not a model employee prior to the injury and had, in fact, and that's part of the record in the motion for summary judgment, had been disruptive with his co-workers prior to the incident and continued and actually worsened. So if you're going to take a long view and to give the ability to look in terms of the credibility issues, it is just as probable, and there's more credibility, I believe, in terms of the documentations, the declarations, and the sequence of events. Let me, because you've run over, let me just say, it may well be that Mr. Turner is completely not credible, but that's not our job here. Our job is to see whether or not he's put forth sufficient evidence which, if believed, would satisfy the standard. And there's lots of things in this record that, reading it cold, I would tend to agree with you that he's going to, if he goes back and gets a trial, he's going to have a very difficult burden to convince a jury about what happened. But credibility is not our concern. I understand, Your Honor. That's our position. Thank you. Thank you for your argument. Anything to add, Mr. Green? You know, when I sit here and I hear the argument, I mean, it's just all I keep seeing is genuine issues of material fact that should be decided. I use the word circumstantial evidence if we get back about things that are time-barred, but the word you used, Your Honor, was motivation, and that's really the same thing. What motivated them? They're not stupid. He's not going to come back after a leg injury and they're going to fire him the first month. He's got years in this job. He gets his bonuses. He gets his pay. He does everything. They contacted his doctor. It took them a year to talk to Dr. Birch about this condition. I just think somebody should listen to the case. We get an opportunity to. We'll argue the case if we get that far. I thank you for hearing me. Okay. Thank both sides for your arguments. Turner v. Association of Apartment Owners of Wailia Point Village, submitted for decision.
judges: Tashima, W. Fletcher, Hurwitz